UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WENDY CURTIS,<br><br>              Plaintiff,<br><br>   v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>              Defendant. | CASE NO. C22-5436 BHS<br><br>ORDER |

This matter is before the Court on Plaintiff Wendy Curtis's motion for partial summary judgment. Dkt. 17. Curtis seeks a summary judgment determination precluding Defendant State Farm Mutual Automobile Insurance Company from advancing the so-called "comparative bad faith" affirmative defense to her insurance bad faith claim. *Id.* at 1. Curtis contends that this defense is not valid under Washington law. *Id.* State Farm responds that comparative bad faith is a legitimate defense under Washington's comparative fault statute, RCW 4.22.070. It asserts that, because insurance bad faith is a tort claim, the trier of fact should be entitled to apportion fault to both Curtis and her attorney for engaging in dilatory conduct. Dkt. 19 at 10.

ORDER - 1

The Court agrees with Curtis that comparative bad faith is not a legitimate defense under Washington law. Accordingly, Curtis's motion for partial summary judgment is granted.

## I.   BACKGROUND

This case arises from a automobile collision between Curtis and another driver, Chrystal Gibbs. Dkt. 1-1 ¶¶ 3.1–3.3. State Farm, which provides to Curtis underinsured motorist (UIM) coverage, "agrees that . . . Gibbs was 100% at fault for the accident and that her $25,000.00 per person bodily injury liability limit was not sufficient to fully compensate plaintiff for the injuries and damages she sustained in the accident." Dkt. 19 at 2. Curtis's insurance contract with State Farm contains a UIM coverage policy limit of $250,000 per person. Dkt. 7 ¶¶ 4.2, 4.4.

On October 6, 2020, Curtis's attorney, Gemma Zanowski, sent to State Farm a letter claiming $8,431.22 in medical expenses and $1,480.38 in lost income as a result of the collision. Dkt. 20-3 at 2, 6. On October 19, a State Farm representative, Christi Wren, sent to Zanowski a letter "confirm[ing] [its] settlement offer in the amount of $5,000 . . . for new money.[1]" Dkt. 20-4 at 2.

On December 1, 2020, Zanowski sent to Wren a letter rejecting this offer. Dkt. 20-5 at 2-3. She explained that Curtis's orthopedic physician confirmed that Curtis "suffered

---

[1] State Farm states that "new money" means "that State Farm agreed to pay UIM bodily injury benefits of $5,000 in addition to plaintiff's $25,000.00 receovery from the at-fault driver and the $8,349.73 in [personal injury protection] medical expense benefits State Farm paid." Dkt. 19 at 4 n.2. State Farm also states that, "[f]or unknown reasons the amount of medical bills claimed in plaintiff's October 6, 2020 demand letter is about eight dollars less than the amount State Farm paid in [personal injury protection] medical expense benefits." *Id.* at 3 n.1.

ORDER - 2

permanent injury as a result of the collision" and that Curtis received "a steroid injection in her knee." *Id.* at 2. Zanowski stated that, "[p]rovided the injection treatment is effective, the recommendation is that [Curtis] continue to receive the injections to help reduce the symptoms she experiences on a daily basis." *Id.* Zanowski also informed State Farm that she "do[es] not yet have those records or bills but can provide them when available." *Id.* Attached to this letter was a declaration from Curtis's orthopedic physician detailing Curtis's injuries, symptoms, and the medical treatment that the physician had provided. Dkt. 20-6.

On December 29, 2020, Wren sent to Zanowski a letter requesting "an update on whether the injection [Curtis] received worked or not" and "an amount you are requesting for future bills and future pain and suffering with a breakdown and how you came up with that amount as well as your counterdemand." Dkt. 20-7 at 2.

On May 21, 2021, Wren telephoned Zanowski and Zanowski demanded the policy limit of $250,000. Dkt. 20-13 at 3. Wren requested medical records. *Id.*

About six months later, on November 11, 2021, Zanowski provided Wren medical records from Curtis's orthopedic physician and physical therapist. Dkt. 20-11 at 6. On December 10, Wren sent Zanowski a letter offering "$67,000 new money." Dkt. 20-8 at 2. On January 12, 2022, Zanowski rejected this offer and again demanded $250,000. Dkt. 20-11 at 6–7.

On February 10, 2022, Wren offered Curtis $80,000. Dkt. 20-11 at 7; Dkt. 20-14 at 2. The following day, Curtis submitted a 20-day Insurance Fair Conduct Act (IFCA) notice form to the Washington Office of the Insurance Commissioner. Dkt. 20-11 at 3.

On February 16, State Farm issued to Curtis an "impasse payment[2] for [its] initial offer of $67,000." Dkt. 20-14 at 2. On February 23, Zanowski sent to Wren a letter rejecting the $80,000 offer and informing Wren that Curtis required knee replacement surgery. Dkt. 20-15 at 2.

On March 1, 2022, State Farm responded to Curtis's IFCA notice, disputing that it had engaged in any wrongdoing. Dkt. 20-16. Curtis subsequently sued State Farm in Pierce County Superior Court, alleging that it breached its insurance contract, violated the IFCA and the Consumer Protection Act, and acted in bad faith. Dkt. 1-1. State Farm removed the action to this Court. Dkt. 1.

State Farm's answer to Curtis's complaint asserts the following three affirmative defenses to Curtis's bad faith claim:

> **Affirmative Defense No. 4:** Plaintiff's injuries and damages, if any, were proximately caused by the negligence of others, including, but not limited to, plaintiff, for whom defendant is not responsible and over whom it exercises no control. Defendant respectfully requests that the Court apportion plaintiff's damages, if any, among the parties and entities responsible, in accordance with RCW 4.22.070. Defendant reserves the right to amend or strike this affirmative defense as investigation and discovery are ongoing.
> **Affirmative Defense No. 5:** Plaintiff's injuries and damages may have been caused by intervening and/or superseding causes over which defendants had no control.
> **Affirmative Defense No. 6:** Plaintiff's lawyer violated RCW 48.01.030 by refusing to negotiate with State Farm in good faith and by refusing to attempt to resolve this claim pre-suit through mediation. Any award in this matter should be reduced by the percentage of fault attributable to plaintiff's lawyer pursuant to RCW 4.22.070.

---

[2] State Farm states that it "pays the 'low end' of its evaluated range of value of a UIM claim when pre-suit negotiations are at an 'impasse.'" Dkt. 19 at 5 n.3. It is not clear from the record what conditions, if any, are attached to such payments.

Dkt. 7 at 12–13.

Curtis moves for a summary judgment determination that these three affirmative defenses are not valid under Washington law. Dkt. 17. State Farm opposes this motion. Dkt. 19. The parties arguments are addressed below.

## II.  DISCUSSION

**A.  Summary Judgment Standard**

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52.

The moving party bears the initial burden of showing that there is no evidence to support an element essential to the nonmovant's case and on which the nonmovant bears the burden of proof. *Celotex*, 477 U.S. at 322–23. Once the movant has met this burden,

the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

**B.     Comparative Bad Faith is Not a Legitimate Affirmative Defense Under Washington Law**

Curtis argues that State Farm's affirmative defenses numbers four through six are not valid under Washington law. Dkt. 17 at 1. She asserts that these affirmative defenses improperly seek to assign comparative fault to both herself and her attorney and, in turn, allege that she and her attorney "have committed a form of comparative bad faith." *Id.* at 1. Curtis avers that, in Washington, there is no cause of action for "reverse bad faith" and that insureds do not owe a duty to negotiate in good faith. *Id.* at 8–10. She contends that a "comparative bad faith" affirmative defense is inconsistent with these basic principles. *See id.*

State Farm responds that it "asserted Affirmative Defenses Nos. 4-6 on the basis that plaintiff['s] counsel did not act in good faith in her pre-lawsuit negotiations with State Farm." Dkt. 19 at 6. It argues that, because insurance bad faith claims sound in tort, the disputed affirmative defenses are proper under Washington's comparative fault statue, RCW 4.22.070.[3] Dkt. 19 at 8–9. State Farm seeks to permit the trier of fact to

---

[3] Washington's comparative fault statute provides, in pertinent part: "In all actions involving fault of more than one entity, the trier of fact shall determine the percentage of the total fault which is attributable to every entity which caused the claimant's damages except entities immune from liability to the claimant under Title 51 RCW." RCW 4.22.070(1).

assign fault to both Curtis and her attorney for engaging in dilatory conduct, asserting that her attorney is an "entity" under RCW 4.22.070. Dkt. 19 at 9. State Farm contends: "Plaintiff (and her counsel) . . . had a contractual duty under the State Farm insurance policy to promptly provide medical information reasonably requested by State Farm so State Farm could accurately evaluate plaintiff's UIM claim." Dkt. 19 at 10. According to State Farm, "if plaintiff's counsel's pre-suit conduct was a cause of delay, State Farm should not be blamed for that and plaintiff's counsel bears some of the fault pursuant to RCW 4.22.070." *Id.*

The Court first addresses whether State Farm properly seeks to distinguish the conduct of Curtis's attorney from that of her own. It does not. Because attorneys are the agents of their clients, *see, e.g., Payette v. Willis*, 23 Wash. 299, 307 (1900), *Wood v. Miller*, 147 Wash. 251, 255 (1928), *State v.* Ford, 125 Wn.2d 919, 922 (1995), the Court declines to distinguish between Curtis's conduct and her attorney's conduct under these circumstances. Therefore, the issue before the Court is whether the trier of fact may apprortion fault to an insured for engaging in so-called "comparative bad faith" in relation to the insured's bad faith claim against its insurer.

Neither party cites to any authority expressly addressing whether comparative bad faith is a valid defense under Washington law. In fact, no Washington court appears to have addressed this issue. *See* 16A DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 28:22 (5th ed. 2022) ("[N]o Washington case has either accepted or expressly rejected the defense of 'comparative bad faith.'"). "In the absence of a controlling decision from a state supreme court, a

federal court must interpret state law as it believes that state's highest court would." *Dias v. Elique*, 436 F.3d 1125, 1129 (9th Cir. 2006).

In Washington, "[b]oth insurer and insured, having entered into an insurance contract, are bound by the common law duty of good faith and fair dealing." *Mahler v. Szucs*, 135 Wn.2d 398, 414 (1998). Indeed, "[t]here is in every contract an implied duty of good faith and fair dealing" that "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569 (1991). This duty "requires only that the parties perform in good faith the obligations imposed by their agreement" and, therefore, "arises only in connection with terms agreed to by the parties." *Id.*

Although both insurer and insured have a duty of good faith, the insured's duty of good faith is categorically and materially distinct from that of the insurer. The source of the insured's duty of good faith arises merely from the insurance contract. For example, when an insurance policy contains a cooperation clause, "the insured is required in good faith . . . to cooperate with the insurer." 14 STEVEN PLITT ET AL., COUCH ON INSURANCE 3D § 199:7 (rev. ed. 2023). As a result, "an insured that 'substantially and materially' breaches a cooperation clause is [typically] *contractually* barred from bringing suit under the policy if the insurer can show it has been actually prejudiced." *Staples v. Allstate Ins. Co.*, 176 Wn.2d 404, 410 (2013) (emphasis added).

By contrast, the source of the insurer's duty of good faith is not merely the insurance contract, but also the *quasi-fiduciary relationship* existing between the insurer

and insured. *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 385 (1986).[4] This "relationship exists not only as a result of the contract between insurer and insured, but because of the high stakes involved for both parties to an insurance contract *and the elevated level of trust underlying insureds' dependence on their insurers*." *Id.* (emphasis added). This quasi-fiduciary "relationship, as the basis of an insurer's duty of good faith, implies *more* than the 'honesty and lawfulness of purpose' which comprises a standard definition of good faith." *Id.* (emphasis added). It also "implies 'a broad obligation of fair dealing' and a responsibility to give 'equal consideration' to the insured's interests." *Id.* at 385–86 (internal citations omitted) (quoting *Tyler v. Grange Ins. Ass'n*, 3 Wn. App. 167, 173, 177 (1970)).

Because an insurer owes a quasi-fiduciary duty to its insured, the insurer's breach of that duty gives rise to an action in tort. *St. Paul Fire & Marine Ins. Co.*, 165 Wn.2d at 130. The same is not true when an insured breaches its contractual duty of good faith. *See Keodalah v. Allstate Ins. Co.*, 194 Wn.2d 339, 349 (2019).

For these reasons, the so-called "comparative bad faith" affirmative defense is not valid under Washington law. Such a defense would require the trier of fact to compare an insured's mere *contractual* breach of the *insurance policy*, *see Staples*, 176 Wn.2d at 410,

---

[4] In *Tank*, the Washington Supreme Court actually stated that there exists a "fiduciary relationship" between the insurer and the insured. 105 Wn.2d at 385. However, the court more recently clarified that, "[b]ecause an insurer must give *equal* consideration to an insured, but is not required to put the insured above itself, . . . the relationship between an insured and an insurer is not a true fiduciary relationship." *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 130 n.3 (2008). Therefore, the relationship is more precisely characterized as "quasi-fiduciary" in nature. *Id.*

to an insurer's *tortious* breach of its *quasi-fiduciary duty*, see *St. Paul Fire & Marine Ins. Co.*, 165 Wn.2d at 130. This distinction is significant. The definition of "fault" in Washington's tort reform act, chapter 4.22 RCW, does not include the general breach of a contractual obligation. *See* RCW 4.22.015.[5] And the Uniform Comparative Fault Act, on which this statutory definition is modeled, provides in a comment that "[t]here is no intent to include in the coverage of the Act actions that are fully contrautual in their gravamen." Uniform Comparative Fault Act, comment to § 1 (promulgated 1977). Therefore, Washington's comparative fault statute, RCW 4.22.070, does not authorize the trier of fact to assign fault to a party who has breached a mere contractual obligation.

       At least two state supreme courts have recognized the fundamental differences between an insured's duty of good faith and an insurer's duty of good faith in rejecting the comparative bad faith defense. *See Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 402–403 (2000); *Stephens v. Safeco Ins. Co. of Am.*, 258 Mont. 142, 147 (1993). As is aptly put by one of these courts, allowing insurers to raise a comparative

---

[5] This statute defines "fault" to

include[] acts or omissions, including misuse of a product, that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability or liability on a product liability claim. The term also includes breach of warranty, unreasonable assumption of risk, and unreasonable failure to avoid an injury or to mitigate damages. Legal requirements of causal relation apply both to fault as the basis for liability and to contributory fault.

RCW 4.22.015.

Although this definition includes breach of warranty, it does not include the breach of any other contractual obligation.

bad faith defense would require the trier of fact to improperly compare "apples and oranges." *Stephens*, 258 Mont. at 147. The same is true under Washington law.

Accordingly, State Farm's affirmative defenses numbers four through six fail as a matter of law. Curtis is therefore entitled to a summary judgment determination precluding State Farm from advancing these affirmative defenses in response to her bad faith claim.

### III. ORDER

Therefore, it is hereby **ORDERED** that Curtis's motion for partial summary judgment, Dkt. 17, is **GRANTED**.

Dated this 27th day of June, 2023.

BENJAMIN H. SETTLE
United States District Judge