UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WENDY CURTIS,<br><br>        Plaintiff,<br><br>  v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>        Defendant. | CASE NO. C22-5436 BHS<br><br>ORDER |

This matter is before the Court on Defendants State Farm Mutual Automobile Insurance Company's motion for partial summary judgment, Dkt. 22. State Farm seeks a summary judgment dismissal of Plaintiff Wendy Curtis's extra-contractual bad faith, Insurance Fair Conduct Act (IFCA), and Consumer Protection Act (CPA) claims. Because genuine issues of material fact exist concerning each of these claims, the motion is denied.[1]

---

[1] Curtis requests oral argument in her response to this motion. Dkt. 25 at 1. This request is DENIED.

ORDER - 1

# I. BACKGROUND

This case arises from an automobile collision between Curtis and another driver, Chrystal Gibbs. Dkt. 1.1 ¶¶ 3.1–3.3. State Farm, which provides to Curtis underinsured motorist (UIM) coverage, "does not contest that . . . Ms. Gibbs is 100% at fault for the collision." Dkt. 22 at 3. Curtis recovered the policy limit of $25,000 from Gibbs's insurance provider, *see* Dkt. 23-2 at 41, and subsequently submitted a UIM claim to State Farm. Dkt. 26-2. Curtis's insurance policy with State Farm contains a UIM coverage limit of $250,000 per person. Dkt. 7 ¶¶ 4.2, 4.4.

Between October 2020 and February 2022, State Farm's claims adjuster, Christi Wren, made four separate settlement offers in response to Curtis's UIM claim. In October 2020, Wren offered Curtis $5,000 in "new money."[2] Dkt. 23-2 at 39. Curtis rejected this offer. *See* Dkt. 23-2 at 42. In May 2021, Wren offered $16,124. *See* Dkt. 26-5 at 12. Curtis also rejected this offer, *see* Dkt. 23-1 at 47, and demanded the policy limit of $250,000, asserting that she had a permanent injury to her left knee that likely required knee replacement surgery. *See* Dkt. 23-2 at 48. In December 2021, Wren offered $67,000. Dkt. 23-2 at 52. Curtis rejected this offer and again demanded $250,000. Dkt. 20-11 at 6–7.

---

[2] State Farm states that "new money" means "that State Farm agreed to pay UIM bodily injury benefits of $5,000.00 in addition to plaintiff's $25,000.00 recovery from the at-fault driver and the $8,349.73 in Personal Injury Protection medical expense benefits State Farm paid." Dkt. 22 at 6.

In February 2022, Wren offered $80,000. Dkt. 20-11 at 7; Dkt. 20-14 at 2. This offer included an "impasse payment[3] for [State Farm's] initial offer of $67,000." Dkt. 23-3 at 17. Curtis rejected this offer, again informing Wren that she required knee replacement surgery. Dkt. 20-15 at 2. Curtis also submitted a 20-day IFCA notice to the Washington Office of the Insurance Commissioner. Dkt. 20-11 at 3. In response to Curtis's IFCA notice, State Farm disputed that it had engaged in any wrongdoing. Dkt. 20-16.

In March 2022, State Farm obtained a report from an independent medical examiner, Dr. Alan Brown, who reviewed Curtis's medical file. *See* Dkt. 26-10. Brown acknowledged that, one day after the collision, Curtis complained of "bilateral knee soreness" and that there was a contusion on Curtis's left knee. Dkt. 26-10 at 3. Ten days after the accident, Curtis reported that the pain in her left knee was worse than the pain in her right knee. *Id.* Brown found that, in January 2020, Curtis reported "crunching," pain, and stiffness in her left knee. *Id.* at 4. He found that, in the following months, Curtis continued to report additional pain, "locking," and "popping" in her left knee. *Id.* He also noted that, in May 2020, one of Curtis's doctors diagnosed her with "patellofemoral chondrosis of the left knee" and that an MRI[4] "showe[ed] severe lateral patellofemoral compartment chondrosis and edema over the [medial collateral ligament] and posterior

---

[3] State Farm states that it "pays the 'low end' of its evaluated range of value of a UIM claim when pre-suit negotiations are at an 'impasse.'" Dkt. 22 at 7 n.2. It is not clear from the record what conditions, if any, are attached to such payments.

[4] Magnetic resonance imaging.

ORDER - 3

medical joint capsule." *Id.* Brown further remarked that a note from a physical therapy appointment in August 2021 indicated that Curtis "report[ed] 0/10 left knee pain and [that] the plan was for discharge from physical therapy." *Id.* at 5. Brown stated, however, that this same physical therapy note stated that Curtis continued to experience "persistent crepitation" in her left knee. *Id.* at 6.

Apparently because Curtis reported "0/10" pain in her left knee, Brown concluded that, "[o]n a more probable than not basis, Ms. Curtis requires no further diagnostic studies, testing, workup or treatment." Dkt. 26-10 at 7. He also concluded that, "[o]n a more probable than not basis, Ms. Curtis will not require total knee replacement" because, "[a]t the time of her discharge from physical therapy, she was pain free and it would be unusual for patellofemoral chondrosis to result in the need for a knee replacement." *Id.* at 8.

Both because Curtis reported no pain at her last physical therapy appointment and because Brown concluded that Curtis most likely did not require further treatment, State Farm took the position that Curtis's patellofemoral chondrosis was not permanent. Dkt. 26-5 at 3. Wren similarly concluded that Curtis did not require further treatment because Curtis reported no pain and was discharged from physical therapy. Dkt. 26-12 at 4. Wren further interpreted the physical therapy discharge note as stating that Curtis's patellofemoral chondrosis was entirely asymptomatic because Curtis no longer experienced pain. *Id.* State Farm accordingly did not change its evaluation of Curtis's UIM claim.

Curtis sued State Farm in Pierce County Superior Court, alleging that it breached its insurance contract, violated IFCA and the CPA, and acted in bad faith. Dkt. 1-1. State Farm removed the action to this Court based on diversity of citizenship. Dkt. 1. State Farm moves for summary judgment on Curtis's extracontractual claims. Dkt. 22. Curtis opposes this motion. Dkt. 25. The parties' arguments are addressed below.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to

establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson*, 477 U.S. at 248.

**B.  Genuine Issues of Material Fact Exist Concerning Curtis's bad faith, IFCA, and CPA Claims.**

State Farm asserts that Curtis disputes merely the value of her UIM claim and that such a dispute is insufficient to support her bad faith, IFCA, and CPA claims. Dkt. 22 at 8, 14–16. It also contends that these extracontractual claims fail because there is no evidence indicating that, "to a reasonably degree of medical certainty (more probably than not)," Curtis "would require future knee replacement surgery as a result of the injuries she sustained in the December 17, 2019 car accident." *Id*. at 8. State Farm further argues that, as a matter of law, it reasonably investigated, evaluated, and negotiated Curtis's UIM claim. *Id.* at 14.

Curtis responds that, "[c]ontrary to defendant's framing of the claims, plaintiff's extracontractual claims are based on State Farm's unreasonable conduct in investigating and evaluating her claims—not on a 'dispute in value.'" Dkt. 25 at 2. Curtis raises numerous arguments as to why genuine issues of material fact exist as to whether State Farm reasonably investigated and evaluated her UIM claim. *See* Dkt. 25 at 7–16

However, all these arguments can be narrowed down to this—a fact issue exists as to whether State Farm failed to reasonably both investigate the severity of an injury to Curtis's left knee and, in turn, account for this injury in evaluating her UIM claim. *See id.* at 22. Curtis also relies on the declaration of an insurance law attorney, Mary Owen, who opines that State Farm unreasonably investigated and evaluated her UIM claim. *Id.* at 16–17.

State Farm replies that it "take[s] issue with plaintiff's claim that her left knee injury is permanent and will one day require a total knee replacement based on the utter lack of medical opinion from plaintiff's own treating physicians to that effect." Dkt. 28 at 5. It argues that "[i]t's certainly not clear that plaintiff has a permanent symptomatic left knee injury in any event, given her statements to her physical therapist in August 2021 that she was pain free ('0/10') and had reduced popping in her left knee and met her physical therapy goals." *Id.* State Farm further contends that the Court should disregard the legal opinions of Curtis's proffered expert, Owen. *Id.* at 4–5.

The Court first addresses whether Curtis properly relies on Owen's declaration in response to State Farm's motion for partial summary judgment. Owen is a practicing attorney in Washington who focuses on insurance law. Dkt. 27 ¶ 2. Curtis cites to Owen's opinions that State Farm "acted in bad faith, unreasonably, and frivolously," "admitted that it failed to communicate offers of settlement in compliance with WAC 284-30-330(13)," "placed its financial interests ahead of its insured's," "demonstrate[ed] a lack of 'equal consideration' of the interests of its insured," evaluated Curtis's claim "without "a clear understanding of the impact Ms. Curtis' injuries had on her life," and

1  "evaluated and reached a value range on Ms. Curtis's claims without an understanding of
2  the expected duration of Ms. Curtis' injury." Dkt. 25 at 16. State Farm asserts that these
3  "are nothing but legal opinions and consequently should be disregarded." Dkt. 28 at 5
4  (emphasis removed). The Court agrees. "Expert testimony is not proper for issues of
5  law." *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996). Those are for
6  the Court. Accordingly, the Court does not consider any legal opinions expressed in
7  Owen's declaration.

        The Court next addresses the merits of Curtis's bad faith, CPA, and IFCA claims.
"An action for bad faith handling of an insurance claim sounds in tort." *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 389 (1992). "Claims of insurer bad faith 'are analyzed applying the same principles as any other tort: duty, breach of that duty, and damages proximately caused by any breach of duty." *Mut. of Enumclaw Ins. Co. v. Dan Paulson Const., Inc.*, 161 Wn.2d 903, 916 (2007) (quoting *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 485 (2003)). "'[T]o establish bad faith, an insured is required to show the breach was unreasonable, frivolous, or unfounded.'" *Id.* (quoting *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 560 (1998)). "Whether an insurer acted in bad faith is a question of fact." *Smith*, 150 Wn.2d at 484. Yet "[q]uestions of fact may be determined on summary judgment as a matter of law where reasonable minds could reach but one conclusion." *Id.* at 485.

        "An insurer does not have a reasonable basis for denying coverage and, therefore, acts without reasonable justification when it denied coverage based upon suspicion and conjecture." *Indus. Indem. Co. of the Northwest, Inc. v. Kallevig*, 114 Wn.2d 907, 917

(1990). "In other words, an insurer must make a good faith investigation of the facts before denying coverage and may not deny coverage based on a supposed defense which a reasonable investigation would have proved to be without merit." *Id.*

Further, an insurer's breach of regulations promulgated by the insurance commissioner, particularly WAC 284-30-330, "constitutes a per se unfair trade practice violation and 'insureds may bring a private action against their insurers for breach of duty of good faith under the CPA[,]' based on such breaches." *Am. Mfts. Mut. Ins. Co. v. Osborn*, 104 Wn. App. 686, 697 (2001) (quoting *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 394 (1986)); *accord Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wn.2d 669, 685 (2017) ("A CPA claim can be predicated on a violation of WAC 284-30-330.").

Like bad faith claims, "IFCA explicitly creates a cause of action for first party insureds who were 'unreasonably denied a claim for coverage or payment of benefits.'" *Perez-Crisantos*, 187 Wn.2d at 680 (quoting RCW 48.30.015(1)).[5] However, unlike the CPA, "IFCA does not create an independent cause of action for regulatory violations." *Id.* at 684.

Genuine issues of material fact exist concerning each of Curtis's extracontractual claims. Regarding the bad faith and IFCA claims, a fact issue exists as to whether State Farm reasonably investigated and evaluated Curtis's UIM claim. During a deposition,

---

[5] State Farm asserts that, in *Perez-Crisantos*, the Washington Supreme Court held that "IFCA *only* applies to situations where an insurer has unreasonably *denied coverage*." Dkt. 22 at 11. But, as Curtis correctly responds, IFCA also explicitly applies when an insurer "unreasonably denied a claim for . . . payment of benefits." RCW 48.30.015(1).

1  State Farm's Federal Rule of Civil Procedure 30(b)(6) representative, Christopher
2  Schultze, testified that State Farm concluded that Curtis's condition of patellofemoral
3  chondrosis in her left knee was not permanent. Dkt. 26-5 at 3. Schultze testified that State
4  Farm based this conclusion on Dr. Brown's March 2022 report of his independent review
5  of Curtis's medical file. *Id.* Schultze clarified that State Farm based this conclusion on
6  Brown's finding that a physical therapy discharge note from August 2021 indicated that
7  Curtis no longer experienced pain in her left knee and on Brown's conclusion that Curtis
8  most likely did not require further treatment. *Id.*

9  In response to whether "that decision to treat this [condition] as . . . something
10 other than a permanent injury[] was . . . a factor in how State Farm valued the benefits
11 that they would pay on this claim," Schultze answered, "Yes." Dkt. 26-5 at 3. Schultze
12 further stated that the permanency of any injury "would have been . . . consider[ed] [in]
13 the futures needed that we consider in the evaluation" and that, "if it was a permanent
14 injury that was going to impact her life for her remaining life, that would be a significant
15 factor in the evaluation." *Id.* Yet he clarified that "State Farm determined that based on
16 physical therapy records indicating [Curtis] has zero -- zero pain and was discharged
17 from treatment and Dr. Brown's opinion that future treatment was not needed." *Id.*

18 Brown did find that, "[o]n August 12, 2021, there is a physical therapy discharge
19 note indicating that Ms. Curtis was reporting 0/10 left knee pain" and, apparently based
20 on this finding, concluded that, "[o]n a more probable than not basis, Ms. Curtis requires
21 no further diagnostic studies, testing, workup or treatment." Dkt. 26-10 at 6, 7. However,
22

1  Brown also found that this same discharge note stated that Curtis continued to experience
2  "persistent crepitation" in her left knee. *Id.* at 6.

3  Notably, Dr. Brown's report does not express any opinion as to whether this
4  particular symptom—persistent crepitation—could be alleviated or cured through further
5  treatment, including knee replacement surgery, or whether it would eventually go away
6  on its own. *See generally id.* To the contrary, Wren testified during a deposition that she
7  did not "recall reading . . . anywhere" "that . . . the arthritis will resolve itself." Dkt. 26-
8  12 at 4. Consistent with Schultze's testimony, Wren testified that Curtis "didn't need any
9  other treatment because . . . [s]he was not only pain free, but she was discharged." *Id.*
10 Wren also interpreted the August 2021 physical therapy discharge note as stating that
11 Curtis's patellofemoral chondrosis was entirely asymptomatic simply because Curtis no
12 longer experienced pain, testifying that "'asymptomatic' and 'pain free' is the same thing
13 to me" because "[i]f they're pain free, I mean, they're -- they're having no symptoms --
14 'asymptomatic,' isn't that no symptoms? That's my understanding of it." *Id.* But
15 persistent crepitation can be, and Curtis claims it as, a symptom separate and distinct
16 from pain.

17  In short, Brown's report does not provide any opinion concerning the permanency
18 of the persistent crepitation in Curtis's left knee. State Farm's failure to inquire further
19 into the permanency of this symptom raises a fact issue as to whether it unreasonably
20 investigated Curtis's UIM claim. Additionally, State Farm apparently did not even
21 consider the persistent crepitation to be a symptom relevant to the evaluation of Curtis's
22 UIM claim. *See* Dkt. 26-12 at 4; Dkt. 26-5 at 3. This raises a fact issue as to whether

State Farm reasonably evaluated the claim. Considering these factual disputes, the Court declines to dismiss on summary judgment Curtis's bad faith and IFCA claims.

The Court also declines to dismiss on summary judgment Curtis's CPA claim. As explained, "[a] CPA claim can be predicated on a violation of WAC 284-30-330." *Perez-Crisantos*, 187 Wn.2d at 685. WAC 284-30-330(13) requires insurers to "promptly provide a *reasonable* basis in the insurance policy *in relation to the facts* or applicable law . . . for the offer of a compromise settlement." (Emphasis added). Because a fact issue exists as to whether State Farm's unreasonably failed to consider the persistent crepitation in Curtis's left knee, a fact issue also exists as to whether State Farm supported its offers with a reasonable basis in relation to the facts. Additionally, Schultze testified that State Farm did not adequately explain how it arrived at its first settlement offer of $5,000:

> Q   Okay. And in this letter, State Farm confirms the amount of the settlement offer, $5,000?
> A   Correct.
> Q   And no information is provided as to how State Farm reached that number; right?
> A   Correct.
> Q   And there's no assessment of how State Farm -- how -- which portion of this $5,000 is attributed to specials or generals or any -- any information; right?
> A   Correct.
> Q   Does this letter, as written, comply with State Farm's policies regarding prompt communications with the insured on -- on claim values?
> A   There should have been additional information explaining how we came to that offer.
> . . . .
> Q   . . . . What were the factors that were considered when State Farm made this initial offer of $5,000 on October 9, 2020?
> A   I'm unable to tell from that letter what they considered.

Dkt. 26-5 at 9.

Schultze also testified that State Farm did not adequately explain how it arrived at its second settlement offer of $16,124, stating that Wren's letter regarding this offer "only speaks to the medical specials and speaks a little about the treatment. We would ask that there's also reference to general damages with that, as far as any past pain and suffering, future pain and suffering, and future wage loss." Dkt. 26-5 at 13. Schultze testified that, based on this letter, there is no way to determine the value that State Farm placed on past or future noneconomic damages. *Id.* at 14.

For these reasons, genuine issues of material fact exist as to whether State Farm's settlement offers complied with WAC 284-30-330(13). The Court therefore declines to dismiss on summary judgment Curtis's CPA claim.

State Farm asserts that Curtis's extra-contractual claims are based on merely a dispute over the value of her UIM claim and that such claims must be based on something more. *See* Dkt. 22 at 15–16 (citing *Perez-Crisantos*, 187 Wn.2d 669; *Osborn*, 104 Wn. App. 686; *Keller v. Allstate Ins. Co.*, 81 Wn. App. 624 (1996)). But Curtis does not merely dispute the value of her UIM claim. She also raises fact issues as to whether State Farm reasonably investigated, evaluated, and communicated the bases for its evaluations of her UIM claim.

State Farm also appears to diminish its duty of good faith, asserting that "[t]he 'equal consideration' / 'fiduciary obligation' standards do not apply when the UIM insured and the UIM carrier stand in an adversarial context because the insurer stands in

1 | the shoes of the at-fault party and can raise any defenses available to the at-fault party."

2 | Dkt. 28 at 4 (citing *Ellwein v. Hartford Accident and Indem. Co.*, 142 Wn.2d 766, 780

3 | (2001); *Schreib v. Am. Family Mut. Ins. Co.*, 129 F. Supp. 3d 1129, 1135 (W.D. Wash.

4 | 2015) (interpreting *Ellwein*)). This statement is not entirely accurate.

5 |     In *Ellwein*, the Washington Supreme Court explained that "a UIM insurer 'stands

6 | in the shoes' of the tortfeasor, with the ability to assert liability defenses," and, therefore,

7 | is not required to "give 'equal consideration' to the insured's interest." 142 Wn.2d at 780,

8 | *overruled on other grounds*, *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 486 (2003)). But

9 | the court also clarified "that the duty of good faith and fair dealing survives within the

10 | UIM relationship . . . because, although the relationship becomes adversarial, the insured

11 | still has 'the "reasonable expectation" that he will be dealt with fairly and in good faith

12 | by his insurer.'" *Ellwein*, 142 Wn.2d at 780, *overruled on other grounds*, *Smith*, 150

13 | Wn.2d at 486 (quoting *Craft v. Econ. Fire & Cas. Co.*, 572 F.2d 565, 568–69 (7th Cir.

14 | 1978)). This obligation of good faith derives from the *quasi-fiduciary* duty that insurers

15 | owe to their insureds. *Cedell v. Farmers Ins. Co., of Washington*, 176 Wn.2d 686, 698

16 | (2013) ("First party bad faith claims by insureds against their own insurer are . . . founded

17 | [in part] upon . . . [the] important public policy pillar[] . . . that an insurance company has

18 | a quasi-fiduciary duty to its insured."); *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*,

19 | 165 Wn.2d 122, 129 (2008) ("The good faith duty between insurer and an insured arises

20 | from a source akin to a fiduciary duty."). Therefore, even in the UIM context, insurers

21 | owe their insureds a quasi-fiduciary duty of good faith, although they need not "'giv[e]

22 |

equal consideration *in all matters* to the insured's interests.'" *Ellwein*, 142 Wn.2d at 779 (quoting *Tank*, 105 Wn.2d at 386).

In any event, *Ellwein* holds that, because UIM insurers "'stand[] in the shoes' of the tortfeasor," "UIM insurers are allowed to assert *liability* defenses available to the tortfeasor." 142 Wn.2d at 780 (emphasis added); *accord Craft*, 572 F.2d at 568 ("[T]he insurer stands in the shoes of the uninsured motorist with regard to the question of *whether the latter was negligent* and with regard to his *defenses such as contributory negligence*" (Emphases added)). State Farm does not seek to assert any liability defenses that would otherwise be available to Gibbs, the underinsured motorist. It instead concedes that "Ms. Gibbs [was] 100% at fault for the collision." Dkt. 22 at 3. *Ellwein* is therefore of no aid to State Farm.

In sum, genuine issues of material fact exist regarding Curtis's bad faith, IFCA, and CPA claims. The Court accordingly declines to dismiss these claims on summary judgment.

### III.  ORDER

Therefore, it is hereby **ORDERED** that State Farm's motion for partial summary judgment, Dkt. 22, is **DENIED**.

Dated this 10th day of August, 2023.

BENJAMIN H. SETTLE  
United States District Judge